IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SHIRLEY ANN JONES, | Civil No. 25-00178 MWJS-RT |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND GRANTING LEAVE TO AMEND IN PART |
| vs. | |
| RISING PHOENIX HOLDINGS CORPORATION, *et al.*, | |
| Defendants. | |

## **INTRODUCTION**

A few weeks after fires ravaged the island of Maui in August 2023, Plaintiff Shirley Ann Jones was hired as a temporary contact center supervisor for a Maui disaster call center project.  Jones is a Black woman over the age of 70.  And in this lawsuit, she alleges that her employer at the call center project—in concert with other named defendants—unlawfully demoted her, retaliated against her, denied her promotional opportunities, and terminated her based on her race, age, color, sex, and protected activity.  She asserts claims under four separate federal civil rights statutes.

Defendants now move to dismiss the complaint, contending that Jones (1) did not exhaust her administrative remedies as to some claims, and (2) has not alleged sufficient facts to plausibly support the others.  Because the court finds both arguments persuasive, it GRANTS Defendants' motions to dismiss.  But because it is at least

possible that Jones could cure some of the identified deficiencies, the court GRANTS—in part and under the terms described in more detail below—Jones leave to file an amended complaint.

## BACKGROUND

1.  On August 8, 2023, flames tore through parts of Maui, destroying thousands of homes and claiming over a hundred lives.  It was the deadliest wildfire in the United States in over a century.  *See generally In re Hawaiian Elec. Indus., Inc., S'holder Derivative Litig.*, No. 24-CV-00164, 2024 WL 3594783, at *1 (D. Haw. July 30, 2024).

About three weeks after the fire, Jones was hired as a temporary Contact Center Supervisor for the Maui Disaster Call Center Project, which was operated by Defendant TB Customer Relations, LLC ("TBCR").  As alleged in Jones's complaint, the project "supported survivors of the Maui wildfires and was staffed under" contracts with the Federal Emergency Management Agency (FEMA).  Dkt. No. 1, at PageID.3 (¶ 15).  Jones reported to Traci Thompson, a TBCR employee who is not named as a defendant in this suit.  *Id.*

Jones alleges that she "brought more than 30 years of experience in supervision, counseling, crisis response, and education," and that she "held a Master's Degree in Guidance and Counseling and a Professional Educator License."  *Id.* (¶¶ 17-18); *see also id.* at PageID.8 (¶ 73-75).  She also "was one of the only African American supervisors assigned to the project."  *Id.* at PageID.3 (¶ 19).

At first, Jones was "assigned to lead call agents, provide escalated support, and offer suggestions to improve agent operations and morale." *Id.* (¶ 20).  She alleges that she "performed these job duties satisfactorily and was not on any performance improvement plans or progressive discipline." *Id.*  Indeed, "[h]er expertise allowed her to quickly adapt, despite the minimal training provided." *Id.* at PageID.4 (¶ 21).  While Jones received "less than two hours of training" during her onboarding, "other new temporary supervisors—predominantly non-Black Daphne Henion and Genierose Piho—received continuous group and 1:1 instruction." *Id.* (¶ 22); *see also id.* (¶ 26) (alleging that Henion is White and Native Hawaiian and that Piho is Native Hawaiian).

According to Jones, Henion and Piho had substantially inferior qualifications to her own.  *See id.* at PageID.7 (¶ 68); *see also id.* at PageID.8 (¶¶ 70-72).  Nonetheless, Jones alleges that "[w]ithin her first month," she "began noticing unequal treatment compared to her non-Black temporary supervisors from Traci Thomspon." *Id.* at PageID.4 (¶23).  In October 2023, the company created new supervisory roles for a "Debris Removal Project," and Jones alleges that these roles "were not posted internally and were not made available for application" by Jones or others similarly situated.  *Id.* (¶¶ 24-25).  Instead, Henion and Piho were selected for the new positions.  *Id.* (¶ 26).

Jones does not allege that she was specifically qualified for or interested in the supervisory positions that Henion and Piho took on—the job responsibilities of which

3

the complaint does not describe.[1]  But Jones goes on to allege that "[a]t the same time" Henion and Piho were promoted, she "was demoted to a non-supervisory position without any documentation or formal communication."  *Id.* (¶ 27).  Jones does not allege that the temporary Contact Center Supervisor position she had held continued to exist at the project after she was demoted.  Nor does she allege that it was filled by another person who fell outside of her protected classifications.

Jones's complaint also focuses on another supervisory position opening that arose in "late October 2023," this one for a position as "Project Manager of the contact center."  *Id.* (¶ 29).  Jones does not allege that she applied for or was even interested in the role.  But she alleges that Brooke Fisher, a "White employee under age 40 with a background in social work," was promoted to the position.  *Id.*  She further alleges that Fisher "lacked experience in disaster operational management or FEMA systems as required for the role of Project Manager"; that Jones was "significantly more qualified" than Fisher; and that she "was neither considered nor offered an interview for the Project Manager role."  *Id.* (¶¶ 30-31).  She alleges, without elaboration, that Defendant Lori Nichols—who worked as a human resources specialist at TBCR—promoted Fisher "solely" because of Fisher's "race and age."  *Id.* (¶ 30).

---

[1]    At one point in the complaint, Jones does generally allege that Henion and Piho were "promoted over her," Dkt. No. 1, at PageID.7 (¶ 66).  But she does not, there or elsewhere, allege that she would have been specifically qualified for or interested in the debris removal positions.

After Fisher was promoted, Jones's input allegedly "was increasingly ignored, and she was excluded from meetings and communications related to team leadership." *Id.* at PageID.5 (¶ 33).  Jones alleges that "[h]er technical issues were mocked by Brooke Fisher and Traci Thompson, who asked whether her laptop was 'plugged in.'" *Id.* (¶ 34).  Jones further alleges that Fisher "falsely accused" her of "failing to follow directions and questioned her competence in front of peers." *Id.* (¶ 35).  And Jones alleges that she made "complaints" about this behavior, but those complaints were ignored by TBCR, as well as by Defendant Rising Phoenix Holdings Corporation ("RPHC")—which Jones alleges is the holding company of TBCR. *Id.* (¶¶ 10, 36).  Jones alleges that she was "continuously scrutinized" between December 1, 2023 and January 13, 2024, "while the non-Black supervisors"—Henion and Piho—"with similar or worse performance were not disciplined." *Id.* (¶ 37).

On December 1, 2023, Jones allegedly submitted an internal race discrimination complaint.  She also allegedly informed management of "her intent to support a separate discrimination complaint" filed by "another African American temporary supervisor." *Id.* (¶¶ 38-39).  According to Jones, she learned at some point that "leadership," including Fisher, expressed "fatigue with these Supervisors," referring to Jones and the other African American temporary supervisory. *Id.* at PageID.7 (¶ 59).  And she generally alleges that "shortly after" her complaint, she "began experiencing increased retaliation":  "her shifts changed without notice, she was excluded from

strategy calls, and she was ignored during team planning." *Id.* at PageID.5 (¶ 40).  Her

suggestions were "dismissed, only to be implemented when suggested by others." *Id.*

(¶ 42).  And she "continued to be held to a different standard from her white and

Native Hawaiian colleagues." *Id.* (¶ 43).

On January 13, 2024, Jones "requested unpaid medical leave to undergo eye

surgery." *Id.* at PageID.6 (¶ 44).  TBCR initially approved her leave "through March 15,

2024, and later extended it to May 9, 2024." *Id.* (¶ 45).  Jones alleges that she "remained

in communication with HR and followed all leave procedures." *Id.* (¶ 46).  But on

May 10, 2024—the day she was scheduled to return to work—Jones allegedly "informed

the company she was not yet medically cleared to return." *Id.* (¶ 47).  On May 22, 2024,

Defendant Tiffany Niles—another human resources professional at TBCR—notified

Jones via email that "she was being terminated for 'job abandonment.'" *Id.* (¶ 49).

When, in "[l]ate June 2025," Jones "formally requested an appeal of her termination

under the company's handbook policy," Niles "denied the appeal, stating the

termination was not disciplinary and therefore not eligible for appeal." *Id.* (¶¶ 54, 56).

Jones alleges that "Defendants' behavior reflects a larger culture of exclusion,

particularly of Black, older, and disabled employees." *Id.* at PageID.9 (¶ 89).

2.  This lawsuit followed, in which Jones brings claims under (1) race and color

discrimination, a hostile work environment, and retaliation under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) race and color discrimination and

retaliation under 42 U.S.C. § 1981; (3) age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*; and (4) disability discrimination and unlawful interference with rights under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*.  *See* Dkt. No. 1.  As Defendants, Jones names her employer, TBCR, as well as RPHC, of which TBCR is allegedly a subsidiary.  Jones also names Tidal Basin Group, which she alleges is another subsidiary of RPHC.  *Id.* at PageID.2 (¶ 9).  And she names two individual Defendants: Tiffany Niles and Lori Nichols, the human resources professionals at TBCR.  Jones generally alleges that "[e]ach Defendant played a role" in the challenged actions.  *Id.* at PageID.10 (¶ 97).

The entity Defendants and individual Defendants each filed motions to dismiss Jones's complaint.  Dkt. Nos. 13 (entity Defendants), 17-18 (individual Defendants). After the court granted a month-long extension of her deadline to respond, Dkt. Nos. 20, 25, Jones opposed all motions.  Dkt. Nos. 27, 30.  Defendants then filed reply memoranda in support of their motions.  Dkt. Nos. 28, 29.

The Court opts to resolve the motions without a hearing as authorized by Local Rule 7.1(c).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action for "failure to state a claim upon which relief can be granted."  Motions brought under this

7

rule "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The question, at this stage, is not whether a plaintiff's allegations are true; it is instead whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Two principles guide the court's assessment of the adequacy of a complaint's allegations. The first is that the court must assume the truth of well-pleaded allegations, as well as all reasonable inferences that could be drawn from them, and "determine whether they plausibly give rise to an entitlement to relief." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). The second is that the court must disregard any bare assertions or legal conclusions couched as factual allegations. *Id.* at 996; *Iqbal*, 556 U.S. at 678-79 (explaining that a pleading must contain more than "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement" (internal quotation marks omitted)). Put differently, while a complaint's factual allegations are assumed true, its conclusory or legal assertions are not. *Iqbal*, 556 U.S. at 678.

Ultimately, the court must dismiss claims for which there is either "no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at 732.

## DISCUSSION

**A.    Exhaustion of Administrative Remedies**

Before addressing the sufficiency of Jones's factual allegations, the entity

Defendants raise a threshold argument in their motion:  that Jones has failed to exhaust

her administrative remedies as to certain of her claims.  They note that exhaustion is a

requirement for Jones's Title VII, ADEA, and ADA claims—that is, for every one of her

claims except for those based on § 1981.  *See Winns v. Exela Enter. Sols., Inc.*, 2023 WL

4992825, at *1 (9th Cir. 2023) (Title VII and ADEA); *Douglas v. Cal. Dep't of Youth Auth.*,

271 F.3d 812, 823 n.12 (9th Cir. 2001) (ADA).  They provide, as Exhibit B to their motion,

what they describe as Jones's Charge of Discrimination with the U.S. Equal

Employment Opportunity Commission ("EEOC").  *See* Dkt. No. 13-4, at PageID.99-101.

And they point out that this EEOC charge (1) only lists RPHC as the employer (with

TBCR's name appearing only in the "Street Address" entry); (2) asserts only

discrimination based on race and retaliation based on a "race discrimination

complaint," and does not list hostile work environment or discrimination or retaliation

based on age, disability, or color; and (3) identifies only the October 2023 demotion

from Contact Center Supervisor and the selection of Henion and Piho for supervisory

positions as the discriminatory acts, and does not list hostile work environment, Jones's

termination, or the alleged failure to provide reasonable accommodations for her

disability.

Although a motion to dismiss ordinarily scrutinizes the sufficiency of a plaintiff's allegations—and typically does not look past the four corners of a plaintiff's complaint—Defendants are correct that, in resolving a Rule 12(b)(6) motion, a court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp.2d 1131, 1141 (D. Haw. 2013) (cleaned up). Defendants are also correct that, in this case, Jones's complaint specifically refers to her EEOC charge and asserts that she *has* exhausted her administrative remedies. *See, e.g.*, Dkt. No. 1, at PageID.2 (¶ 6) ("Plaintiff timely exhausted her administrative remedies, filing EEOC Charge No. 486-2024-00127."). Accordingly, although Jones did not attach the EEOC charge to her complaint, it is fairly viewed as incorporated by reference. And while Jones opposed Defendants' motions to dismiss, she did not dispute the authenticity of the copy of the EEOC charge they provided. The court therefore may consider the document "without converting the Rule 12(b)(6) motion into one for summary judgment." *Queen's Med. Ctr.*, 948 F. Supp.2d at 1141 (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

In light of the EEOC charge, Defendants contend that the court should dismiss each of the following for failure to exhaust: (1) all claims against TBCR and Tidal Basin Group because they were not named as employers in the EEOC Charge; (2) Jones's Title

VII hostile work environment and color discrimination claims, as well as Jones's ADEA and ADA claims; and (3) all factual claims outside of the October 2023 demotion of Jones and promotion of Henion and Piho.

In her opposition to the motions to dismiss, Jones not only declined to dispute the authenticity of the EEOC charge that the entity Defendants supplied, but also declined to dispute her failure to exhaust administrative remedies along the lines detailed above. Nonetheless, the court concludes that the reference to TBCR in the address field of Jones's EEOC charge was enough—given that TBCR is a subsidiary of RPHC—to exhaust administrative remedies as to TBCR, to whatever extent those claims have adequately been exhausted as to TBCR. For that reason, the court DENIES Defendants' motion to dismiss to the extent that it sought to dismiss claims against TBCR on the ground that TBCR had not been explicitly listed as an "employer" in the EEOC charge.

Given Jones's non-opposition, however, the court otherwise GRANTS the entity Defendants' motion to dismiss on these grounds. This exhaustion-related dismissal does not reach (1) Jones's Title VII race discrimination and retaliation claims against RPHC and TBCR concerning Jones's October 2023 demotion and the promotion of Henion and Piho, which appear to have been exhausted, or (2) Jones's claims under § 1981, as to which no exhaustion is required. Moreover, because it is at least conceivable that Jones could allege, in a future complaint, that she *did* exhaust her

administrative remedies for her Title VII, ADEA, and ADA claims—perhaps, for

example, in a separate EEOC charge that she has not yet identified to the court—this

dismissal is without prejudice and with leave to amend.[2]

### B.    The Individual Defendants

The individual Defendants raise a threshold challenge of their own:  they

contend, correctly, that Jones cannot "bring the Title VII, ADEA, and ADA claims

against the [i]ndividual Defendants because such claims can only be asserted against

the employer, not individuals."  Dkt. No. 18, at PageID.148 n.1 (collecting authorities).

For that reason, the individual Defendants contend that Jones may only proceed against

them under § 1981.[3]  Jones does not challenge this argument in her opposition—and

could not have done so, given prevailing law.  In considering a Rule 12(b)(6) motion,

the court must dismiss claims lacking any "cognizable legal theory."  *Navarro*, 250 F.3d

at 732.  The court therefore GRANTS the individual Defendants' motion to dismiss all

---

[2]    The entity Defendants separately argue that "Tidal Basin Group" is merely a
trade name, rather than a separate legal entity.  *See* Dkt. No. 13-1, at PageID.62-63.
Jones does not dispute that assertion, but to ensure she has a full opportunity to come
forward with any facts supporting her effort to name Tidal Basin Group as a defendant,
the dismissal of Tidal Basin Group is without prejudice and with leave to amend.

[3]    The individual Defendants note that "the Ninth Circuit has not determined
whether an individual may be liable under §1981," but commendably acknowledge that
"other circuits and district courts in the Ninth Circuit have determined individuals may
be held liable for violations of rights provided under Section 1981" and do not contend
that this court should hold otherwise.  Dkt. No. 18, at PageID.150 (quoting *McAllister v.
Adecco USA Inc.*, Civ. No.  16-00447, 2018 WL 6112956, at *13 (D. Haw. Nov. 21, 2018)
(cleaned up)).

Title VII, ADEA, and ADA claims against them.  This dismissal is with prejudice and without leave to amend.

Turning to the complaint's factual allegations, the individual Defendants next contend that the § 1981 claims against them should be dismissed because they are insufficient to state a plausible claim for relief.  The court agrees.  To state a claim under § 1981, a plaintiff "must show intentional discrimination on account of race," *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989), and "must initially plead . . . that, but for race, [she] would not have suffered the loss of a legally protected right," *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).  Furthermore, a plaintiff may not generically allege that all defendants participated in a legal violation; to survive a motion to dismiss, the complaint must allege facts showing that each named individual plaintiff either "personally participated in the discriminatory acts or was informed of the wrongdoing of [her] subordinates but was grossly negligent or deliberately indifferent as to their supervision."  *McAllister*, 2018 WL 6112956, at *13 (cleaned up).

Jones's complaint does not meet these requirements.  Concerning Defendant Niles, the complaint merely alleges that she notified Jones of her termination, that she denied Jones's request for an appeal, and that she "oversaw the termination and appeal denial with full knowledge of Plaintiff's protected status and medical situation."  Dkt. No. 1, at PageID.6, 10 (¶¶ 49, 56, 98).  Even accepting these factual allegations as true,

13

they do not assert a plausible claim for relief against Niles under § 1981.  Nothing in

these allegations supports the conclusion that Niles acted *because of* Jones's race or race-

related complaint.  That Niles is alleged to have been aware of Jones's protected status

and medical situation does not support the inference that Niles was motivated by

either.  Nor has Jones adequately alleged facts that would support the conclusion that

Niles would not have acted "but for" Jones's race.  *Comcast Corp.*, 589 U.S. at 341.

Indeed, the allegations do not suggest that Niles had any control over the decision to

terminate Jones or deny her appeal.  A human resources professional is not liable under

§ 1981 merely because they inform an employee of their termination and of the

company's decision not to allow an appeal.

As to Defendant Nichols, the complaint makes the allegation that she promoted

Fisher "because of" Fisher's "race and age."  Dkt. No. 1, at PageID.10 (¶ 99).  But that

bare assertion is a legal conclusion couched as fact—and in considering a Rule 12(b)(6)

motion, the court must disregard it.  *See Eclectic Props. E.*, 751 F.3d at 996; *Iqbal*, 556 U.S.

at 678-79.  Although it is conceivable that Jones could substantiate this assertion with

factual detail in an amended pleading, she has not substantiated it in the current

complaint.  The only other allegation against Nichols is that she "failed to investigate or

take action on internal complaints raised by Plaintiff."  Dkt. No. 1, at PageID.10 (¶ 99).

Even accepting this assertion as true, it does not state a plausible claim for relief under

14

§ 1981 because it would not establish that Nichols acted—or failed to act—because of

Jones's race or race-related complaints.

To be sure, Jones's complaint also contains more generalized assertions to the

effect that "[e]ach Defendant played a role" in one form of misconduct or another.  Dkt.

No. 1, at PageID.10 (¶97).  But these broad allegations do not help Jones satisfy her

pleading obligations; "'everyone did everything' allegations" of that variety are

insufficient to satisfy federal pleading standards.  *Shumlich v. U.S. Bank, N.A.*, Case No.

2:24-cv-01681, 2025 WL 19871, at *2 (W.D. Wash. Jan. 2, 2025) (quoting *Destfino v.

Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)); *see also A.B. v. Hilton Worldwide Holdings Inc.*,

484 F. Supp.3d 921, 943 (D. Or. 2020) (explaining that a complaint may not "assert[]

claims against multiple defendants without specifying which of the defendants are

responsible for which acts or omissions" (cleaned up)).

For these reasons, the court GRANTS the individual Defendants' motion to

dismiss Jones's § 1981 claims.  Jones could conceivably address these deficiencies,

however, and this dismissal is therefore without prejudice and with leave to amend.

But Jones is cautioned that if she cannot allege facts that would establish each of these

individuals' personal liability, she should not include them as named defendants in an

amended pleading.

//

//

15

C.    The Entity Defendants

The remaining question is whether the complaint's factual allegations against the entity Defendants are sufficient to plausibly allege claims for race discrimination and race-related retaliation under either Title VII or § 1981.

1.    To make out a plausible a claim of disparate treatment on the basis of race, whether under Title VII or § 1981, Jones must allege facts that, taken as true, would establish that the entity Defendants either failed to promote or demoted her because of her race.  And while race must be at least a "motivating factor" under Title VII, Jones cannot proceed under § 1981 unless she plausibly alleges that "but for race, [she] would not have suffered the loss of a legally protected right."  *Comcast Corp.*, 589 U.S. at 337, 341.

The allegations in Jones's current complaint do not meet these standards.  As an initial matter, many of the allegations amount to bare assertions and therefore must be disregarded.  For example, Jones asserts that Fisher was promoted "solely" because of her "race and age."  Dkt. No. 1, at PageID.4 (¶ 30).  In a similar vein, she alleges that "Defendants' behavior reflects a larger culture of exclusion, particularly of Black, older, and disabled employees."  *Id.* at PageID.9 (¶ 89).  She generally alleges that "[w]ithin her first month," she "began noticing unequal treatment compared to her non-Black temporary supervisors from Traci Thompson."  *Id.* at PageID.4 (¶ 23).  At the motion-to-

16

dismiss stage, Jones must allege facts that, taken as true, would establish these conclusions. It is not enough simply to assert them.

Other allegations are less conclusory but are still lacking critical detail. Jones alleges that she received substantially less training during her onboarding than Henion and Piho, for example, but her own allegations provide a race-neutral reason: according to Jones herself, Henion and Piho had substantially inferior qualifications to her own. *Id.* at PageID.7 (¶ 68). Accepting these allegations as true, Jones has shown a difference in treatment, but has not shown that the difference was because of race.

Similarly, Jones alleges that in October 2023, Henion and Piho were selected for newly created supervisory roles overseeing a "Debris Removal Project." *Id.* at PageID.4 (¶¶ 24-25). But Jones does not allege that she was specifically qualified for or even interested in these new positions, the responsibilities of which the complaint does not describe. Moreover, although Jones alleges that her prior qualifications were superior to those of Henion and Piho, she does not allege that her actual work experience at TBCR—between August and October 2023—was materially the same as that of Henion and Piho. The complaint, in its current form, is therefore consistent with the possibility that Henion and Piho might have obtained on-the-job experience that made them better suited than Jones to pivot into the newfound tasks. Moreover, while Jones alleges that she performed her own job tasks "satisfactorily" between August and October 2023, *id.* at PageID.3 (¶ 20), she does not allege that Henion and Piho performed no better in the

17

same time period.  Accordingly, while Jones again identifies a way in which she was treated differently from others—colleagues who, at least when initially hired, were allegedly less qualified than her and were later promoted to newly created positions— she has not alleged sufficient facts to support the inference that these differences were the result of racially motivated disparate treatment.

Jones also alleges that at around the same time Henion and Piho were promoted, she was demoted from her temporary supervisory position.  But the complaint does not adequately allege facts that would support the inference that this was done for race-related reasons.  The complaint does not allege, for example, that her concededly temporary supervisory position continued to exist after she was removed from it; nor does she alleged that, if the position continued to exist, it was filled by someone outside of her protected classification.  Here again, then, the complaint does not plausibly allege that Jones was demoted because of her race.

The same is true of Jones's allegations concerning Fisher's promotion.  Although Jones alleges that she was substantially more qualified on paper than Fisher, she makes no allegations about what work Fisher was actually performing at TBCR—or whether that hands-on work might have made Fisher a more natural choice for the "Project Manager" role.  What is more, the complaint does not allege that Jones even applied for or expressed an interest in the position.  That is a significant omission because—unlike with the debris removal positions to which Henion and Piho were promoted—Jones

does not allege that TBCR failed to internally post the Project Manager position.  The complaint is therefore consistent with the possibility that Fisher applied for the position and Jones did not.  And that is not a difference based on race.

In fact, the complaint itself identifies race-neutral reasons for any disparate treatment of Jones at TBCR, and while the complaint asserts that these reasons were false, it does not offer sufficient factual detail to support that conclusion.  First, the complaint alleges that Fisher "made unfounded and unjustified complaints about Plaintiff's alleged insubordination, falsely reporting to other leadership that Plaintiff 'does not follow directions.'"  Dkt. No. 1, at PageID.7 (¶ 59).  But the complaint does not offer any factual detail to support the conclusion that the complaints were in fact unfounded or unjustified, or that the reports of insubordination were false.  Second, the complaint alleges that leadership expressed "fatigue" with Jones and another African American colleague.  *Id.*  Given that the comment itself did not refer to race, Jones must allege sufficient facts to support the inference that it nonetheless was motivated by race.  She might, for example, allege facts showing that leadership had similar moments in which it concluded that others outside of Jones's racial classification had been accused of insubordination or failing to follow directions, and yet leadership did not show "fatigue" toward them.  The complaint, in its current form, does not offer any factual material of that sort.

19

2.  To make out a claim of retaliation under either Title VII or § 1981, Jones must allege facts that, taken as true, would plausibly show that she was retaliated against either because she made a complaint of race-based discrimination or because she "complained about a violation of another person's" right to be free from such discrimination.  *CBOCS Wests, Inc. v. Humphries*, 553 U.S. 442, 445 (2008); *see also Manatt v. Bank of Am., NA*, 339 F.3d 792, 797-78 (9th Cir. 2003).

Jones does adequately allege that on December 1, 2023, she submitted an internal race discrimination complaint.  She also adequately alleges that she informed management of her intent to support the discrimination complaint of another African American temporary supervisor.  Dkt. No. 1, at PageID.5 (¶¶ 38-39).  But while she generally alleges that she thereafter faced "retaliation," the complaint does not offer sufficient factual detail to support the inference that she suffered retaliation as a result of her protected activity.

For example, Jones alleges that after she had engaged in protected activity, she experienced the "retaliation" of "her shifts chang[ing] without notice, [her being] excluded from strategy calls, and [her being] ignored during team planning."  *Id.* (¶ 40).  But the complaint does not allege that Jones had not been experiencing these things *before* her protected activity; if anything, the complaint suggests that her difficulties with Fisher began well before December 1, 2023.  *See, e.g., id.* at PageID.5 (¶ 33) (alleging that after Fisher was promoted in October 2023, Jones's input "was increasingly ignored,

and she was excluded from meetings and communications related to team leadership"). Nor does the complaint allege that other similarly situated colleagues were not experiencing similar things in that same time period. The complaint in its current form is, therefore, consistent with the possibility that work conditions—including, for example, the changing of shifts without notice—were in flux for many of the employees who were working on Maui wildfire recovery efforts during that period. Given these factual shortcomings, the complaint does not adequately allege that any of the unfavorable actions Jones faced were because of her protected activity.

Finally, Jones alleges that TBCR mishandled her leave requests and request for an appeal of her termination. But the complaint does not adequately allege that TBCR acted with retaliatory motives. Jones in fact alleges that when she asked for leave in January 2024, after her internal race discrimination complaint had been filed, TBCR granted it—and then extended the leave period. TBCR did not terminate Jones until she failed to report to work on May 10, 2024, the day she was scheduled to do so. And while Jones generally alleges that she had "remained in communication with HR and followed all leave procedures," *id.* at PageID.6 (¶ 46), she does not plausibly allege that similarly situated employees who failed to report to work would be treated any differently. Nor does she plausibly allege that the "company's handbook policy" should have afforded her an appeal of her termination, despite the fact that it was "not disciplinary" but rather based on "job abandonment." *Id.* at (¶¶ 54, 56).

21

*    *    *

In short, the complaint does not plausibly allege racially disparate treatment or
retaliation, whether under Title VII or § 1981.  The court therefore GRANTS the entity
Defendants' motion to dismiss on this ground.  Because Jones could conceivably cure
these deficiencies, this dismissal is without prejudice and with leave to amend.  In
granting leave to amend, however, the court notes that Jones's current complaint offers
no factual detail to support the inclusion of RPHC or Tidal Basin Group as named
defendants.  Jones is cautioned that if she chooses to file an amended complaint, she
should not include these entity Defendants if she cannot allege facts to support their
liability.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss.
The dismissal of the Title VII, ADEA, and ADA claims against Defendants Tiffany Niles
and Lori Nichols is with prejudice and without leave to file an amended complaint.  The
dismissal is otherwise without prejudice and with leave to amend.

If Jones elects to file an amended complaint, she must comply with the following
requirements:

(1)    Jones's deadline to file an amended complaint is October, 30, 2025;

(2)    Jones's amended complaint should be titled "First Amended Complaint";

(3)    Jones must cure the deficiencies that have been identified above in the

current complaint. If she cannot cure the deficiencies as to any defendant,

her First Amended Complaint should not name that entity or individual

as a defendant.

Jones is cautioned that failure to timely file an amended complaint that conforms

with this order will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED: October 1, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 25-00178 MWJS-RT, *Shirley Ann Jones v. Rising Phoenix Holdings Corporation*, et al.; ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND GRANTING LEAVE TO AMEND IN PART